IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CHRISTOPHER EUGENE DE ROSSITTE                                              PLAINTIFF

v.                                    Civil No.6:17-cv-06043

CORRECT CARE SOLUTIONS, INC., DR.
NANETTE VOWELL, and NURSE
MELISSA L. GIFFORD                                                          DEFENDANTS

## ORDER

This is a civil rights action filed by Plaintiff Christopher Eugene De Rossitte pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's Motion to Compel. (ECF No. 130). Defendants have filed a Response in opposition to the motion. (ECF No. 140). The Court finds the matter ripe for consideration.

## BACKGROUND

Plaintiff filed this lawsuit on May 4, 2017, asserting a 1983 claim for denial of medical care. Plaintiff alleges Defendants Correct Care Solutions, Inc. ("CCS"), Dr. Nanette Vowell, and Nurse Melissa L. Gifford. have denied him medical care for over three years. Specifically, he claims:

> The Plaintiff, for over two and half years, has and continues to suffer from a frequently debilitating and always painful condition (likely a bacterial infection, MRSA). Symptoms include many NEVER addressed by ANY CCS staff person despite dozens and dozens of sick calls, requests and grievances: constant pain in tissues of face and head; frequent, usually daily headaches, mild to severe; excessive thirst; difficulty swallowing; recurrent boils and bumps on face; recurrent swelling of eyelids; earaches; muscle weakness and pain, shortness of breath, persistent and recurrent rashes; urine irregularities; poor blood work labs; bouts of nausea. And also includes a few INEFFECTIVELY addressed symptoms; constant eye pain and irritation; build-up of irritants under eyelids resulting in sleep deprivation; blurred, cloudy and dimmed vision; constant sinus trouble; recurring cough; recurring sore throat; edema on arms. Possible long-term health issues and

permanent vision damage may already have resulted.[1]

(ECF No. 14, pp. 4, 8). Plaintiff is suing Defendants in both their personal and official capacities.

On June 5, 2018, Plaintiff filed his first Motion to Compel (ECF No. 74) which was granted by the Court (ECF No. 80), and subsequently appealed by Defendants (ECF No. 90). On, November 9, 2018, the Honorable Susan O. Hickey, United States District Judge, affirmed the Court's decision granting Plaintiff's first Motion to Compel. (ECF No. 122). As a result, Defendants were ordered to produce the following information to Plaintiff:

1) The names and addresses of potential witnesses Defendants intend to call at trial and a short description of the nature of their testimony.

2) Internal responses or other documents related to the Plaintiff's August 2016 letter to CCS.

3) The full text of ADC HSP 800.00.

4) All eOmis medical records and documents and other electronic documents concerning the Plaintiff from November 1, 2013 until the present.

5) Internal and external communication concerning Plaintiff's medical care from November 1, 2013 until the present.

6) Blood lab reports from November 1, 2013 until the present.

7) ADC Health Services Request Forms relating to Plaintiff from November 1, 2013 until the present.

8) ADC Request Forms marked "medical" from November 1, 2013 until the present relating to Plaintiff.

9) The contact address for and medical documents generated by Dr. Kristin Law regarding her December 16, 2016 examination of Plaintiff.

10) The contact address for and medical documents generated by Dr. Thomas Moseley regarding his January 27, 2017 examination of the Plaintiff.

---

[1] MRSA is a "drug-resistant strain of staph bacteria. MRSA is only susceptible to a limited number of antibiotics, but most MRSA skin infections can be treated without antibiotics by draining the sores. MRSA can be spread through direct contact with infected individuals or though contact with materials that have been exposed to the bacteria..." *Kaucher v. County of Bucks*, 455 F.3d 418, 421 (3rd Cir. 2006).

11) List of state or federal sanctions, fines, criminal charges or other court imposed settlements or injunctions against or involving CCS over the last 3 years which are based on similar allegations made by Plaintiff in the prison setting for denial of medical care.

12) List of complaints filed against Defendant Vowell with the State of Arkansas Physician's Board over the last 3 years which are based on similar allegations made by Plaintiff in the prison setting for denial of medical care.

13) Copy of any record or document in which Defendant Vowell curtails or discontinues any treatment or medication for the Plaintiff between November 1, 2013 until the present.

14) Any document generated or added to by Defendant Vowell suggesting the Plaintiff is delusional, a malingerer or a hypochondriac or any discussion of his mental health between November 1, 2013 until the present.

15) Physician notes, electronic or otherwise, concerning the Plaintiff between November 1, 2013 until the present.

16) List of complaints filed against Defendant Gifford with the State of Arkansas Nursing board over the last 3 years which are based on similar allegations made by Plaintiff in the prison setting for denial of medical care.

17) Any document generated or added to by Defendant Vowell [Gifford] suggesting the Plaintiff is delusional, a malingerer or a hypochondriac or any discussion of the Plaintiff's mental health.

(ECF No. 80, pp. 5-6).

On January 17, 2019, Plaintiff filed a Motion for Sanctions (ECF No. 127) claiming Defendants failed to produce all the medical records ordered by the Court and asserting Defendants altered some of the records they did produce. Plaintiff also claimed Defendants failed to produce emails from Defendants Vowell and Gifford. *Id.* On February 26, 2019, the Court denied Plaintiff's Motion for Sanctions finding Defendants had produced all the documents previously ordered by the Court that were in their possession and found Defendants did not alter any documents. (ECF No. 144). The Court also noted that on July 24, 2018, Defendants sent Plaintiff

1,781 pages of Bates-numbered medical records to Plaintiff. On August 6, 2018, Defendants sent Plaintiff an additional 79 Bates-numbered pages of records which included additional medical records and other documents. As recently as January 31, 2019, Defendants sent Plaintiff 405 Bates-numbered pages of mental health records. (ECF No. 134, p.2).

The same day Plaintiff filed his Motion for Sanctions, he filed the instant Motion to Compel (ECF No. 130) seeking what appears to the Court to be some of the same documents already produced by Defendants. Plaintiff also asks the Court to compel production of information not addressed in any of the Court's previous orders.

## **APPLICABLE LAW**

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26, which provides in part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i)   The discovery sought is unreasonable, cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii)  The party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) The proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Further, under rule 26(c), "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c).

The burden is generally on the party resisting discovery to show why discovery should be limited. *Cincinnati Ins. Co. v. Fine Home Managers, Inc.*, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010). In carrying this burden, the objecting party cannot rely on mere statements and conclusions but must specifically show how the objected-to disclosures would be irrelevant or overly burdensome, overly broad, or oppressive. *See St. Paul Reinsurance Co., Ltd. v. Comm. Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (collecting cases).

## **DISCUSSION**

In the instant motion, Plaintiff states he sent discovery requests to Defendants on June 12, July 7, and July 15 of 2018 and Defendants failed to adequately respond or produce the information. Plaintiff acknowledges some of these requests overlap with the requests which were the subject of the Court's order granting his first motion to compel. In their Response to Plaintiff's motion, Defendants state Plaintiff's summary of his requests does not accurately reflect the requests Plaintiff made to them in 2018. (ECF No. 140). The Court agrees and will address only Plaintiff's actual discovery requests – as opposed to his summary - and Defendants' responses thereto. Plaintiff's discovery requests at issue and Defendants' responses are set forth below. The Court will address each request in the order Plaintiff has presented them in his Motion to Compel. (ECF No. 130).

### A. **June 12, 2018 request to Melissa Gifford (ECF No. 130-1, pp. 1-11)**

INTERROGATORY NO. 1: Please provide a detailed and specific accounting of your education and training regarding the spinal column such that enables you, without any examination or inquiries directed to the patient (as was the case with the Plaintiff on June 6, 2018) to issue a competent medical opinion that a patient with a spinal column injury should

5

not continue on medications prescribed over many years and that his decision should not be referred to a more knowledgeable person or physician.

RESPONSE: Objection. This interrogatory is argumentative. It also assumes facts not in evidence. Defendant further objects because this interrogatory is not proportional to the needs of the case because Plaintiff is asking for information regarding new medical issues that are not relevant to the allegations in his Complaint.

Plaintiff has not made any claims in this lawsuit regarding denial of medical care for his spinal column or fractured bones. Plaintiff has failed to establish why the requested information in Interrogatory No. 1 submitted to Defendant Gifford on June 12, 2018 is relevant and therefore his Motion to Compel as to this request is **DENIED**.

REQUEST NO. 1: As cited in the June 7th 2018 response by you to the Plaintiff's June 6th 2018 initiated ADC Health Service Request Form, also known as a "sick call form", please provide all CCS policies and protocols which you followed (or did not follow) or in any way related to your decisions, actions, inactions or Plaintiff's condition in the June 6th encounter or your response on June 7th to the form especially though not limited to the following:

  a. Over-the-counter, or non-prescription medications
  b. Naproxen
  c. Acetaminophen
  d. simethicone
  e. Renewal of long-term or chronic prescriptions
  f. Definitions of 'chronic' conditions
  g. Spinal column injuries
  h. Breaks, fractures other damage to bones
  i. Vertebrae injuries
  j. Nurses authority to prescribe treatment
  k. nurses' discretion to prescribe (or not) exercises or other non-medical treatment or solutions in general and in specific regard to back or spinal column injuries
  l. nurses' authority to disregard, discount or otherwise not consider a previous treatment
  m. nurses' authority to enable or deny provider visit and the criteria for such
  n. "nursing protocol" as mentioned in the response in its entirety
  o. Degenerative discs, also known as degenerative disc disease
  p. Pain management
  q. Conflict of interest avoidance
  r. Responsibility regarding patients involved in litigation
  s. Encounters with patients engaged in litigation against you, and recusal (or not) from medical decision-making process
  t. Encounter for standard sick call

    u. Encounter for medicine renewal sick call
    v. Definitions for sick call by type, whether new, existing, ongoing, repeat, chronic or follow-up

RESPONSE: Objection. This interrogatory is not proportional to the needs of the case because Plaintiff is asking for information regarding new medical issues that are not relevant to the allegations in his Complaint.

  Again, Plaintiff has failed to meet his burden to demonstrate the information requested is relevant. The Court finds the requests in Request No. 1 are not proportional to the needs of the case because Plaintiff is seeking information relating to medical issues that are not part of his Complaint. Plaintiff has not made any claims regarding his spinal column, fractured bones, vertebrae injuries, or issues with medications prescribed or not prescribed for these conditions. Accordingly, Plaintiff's Motion to Compel with respect to Request No. 1 submitted to Defendant Gifford on June 12, 2018 is **DENIED**.

  **B. <u>July 7, 2018 request to Melissa Gifford (ECF No. 130-2, pp. 1-4)</u>**

<u>INTERROGATORY NO. 1</u>: Please provide the termination date of Gifford's employment with CCS at the SNU-ORCU facility.

<u>RESPONSE</u>: In June of 2017, Defendant Gifford separated from Correct Care Solutions, LLC's employment for reasons unrelated to her clinical performance or her clinical judgment.

<u>INTERROGATORY NO. 2</u>: Please provide the reason(s) and cause(s) Gifford's employment was terminated by CCS at the SNU-ORCU facility.

<u>RESPONSE</u>: See Answer to Interrogatory No. 1.

  As for Interrogatory No. 1, the Court finds Defendants' response is proper under the Federal Rules of Civil Procedure. Defendants have provided the date Defendant Gifford left her employment. With respect to Interrogatory No. 2, Defendants represent Gifford's department from CCS was due to personal reasons unrelated to her job performance. The Court finds the personal reasons Defendant Gifford left her employment with CCS are not relevant to the claims in this

lawsuit. Accordingly, Plaintiff's Motion to Compel as to Interrogatory Nos. 1 and 2 submitted to Defendant Gifford on July 7, 2018 is **DENIED**.

REQUEST NO. 1: Please provide copies of any notes memoranda or other documents generated by or added to by Gifford concerning the Plaintiff not electronically stored.

RESPONSE: To the extent that any records or documents exist, they have been provided in the medical records mailed to Plaintiff on July 23, 2018, or they are not in possession of Defendants.

According to Defendant Gifford's Response to Request No. 1, Plaintiff has been provided with the requested records which were mailed out to him on July 23, 2018 (after this Court granted Plaintiff's first motion to compel) or the requested documents are not in their possession. The Court finds Request No. 1 is duplicative and repetitive and involves documents and information previously provided to Plaintiff by Defendants. Therefore, Plaintiff's Motion to Compel as to Request No. 1 sent to Defendant Gifford on July 7, 2018, is **DENIED**.

### C. July 7, 2018 request to CCS (ECF No. 130-3, pp. 1-7)

INTERROGATORY NO. 1: Please provide the termination date, reason(s) and cause(s) of Melissa Gifford's termination of employment at the SNU-ORCU facility.

RESPONSE: In June of 2017, Defendant Gifford separated from Correct Care Solutions, LLC's employment for reasons unrelated to her clinical performance or her clinical judgment.

For the same reasons stated above, Plaintiff's Motion to Compel the personal reasons for Defendant Gifford's termination of employment with CCS in Interrogatory No. 1 submitted to Defendant CCS on July 7, 2018 is **DENIED**.

REQUEST NO. 1: Please provide all additional electronic documents stored in eOMIS generated up to and including the current date from the date of the Plaintiff's arrival at the SNU-ORCU facility on November 15, 2013 concerning the Plaintiff in any way. (Footnote 2 – Including Condensed Health Services Encounter from November d1st 2013 until the present.)

RESPONSE: This information was mailed to Plaintiff on July 23, 2018, in response to the Court's Order (DE # 80) entered July 9, 2018.

8

REQUEST NO. 2: Please provide all documents, electronic or otherwise, generated by Gifford that in any way concern the Plaintiff in addition to that already provided, up to and including the date of her termination.

RESPONSE: See Response to Request No. 1.

The Court finds Request Nos. 1 and 2 are cumulative and duplicative. Defendants represent the requested documents were provided to Plaintiff on July 23, 2018, in response to this Court's order granting Plaintiff's first motion to compel. Therefore, Plaintiff's Motion to Compel the information in Request Nos. 1 and 2 sent to CCS by Plaintiff on July 7, 2018 is **DENIED**.

INTERROGATORY NO. 2: Please provide an accounting, (Footnote 1 By "accounting" is meant only date filed, parties and current status; or if concluded, a VERY brief summary of disposition - nothing more.) including date filed, of all federal lawsuits naming CCS as a defendant which has gone to trial in the last 5 years and the disposition, and date thereof, of each (or note if ongoing); and for the same period, a list of all federal lawsuits naming CCS as a defendant, with date filed, which was settled prior to trial. Only, information, and only the very basic information here above noted, concerning lawsuits which have gone to trial or been settled is requested here.

RESPONSE: Objection. The interrogatory seeks information that is not proportional to the needs of this case in light of the factors listed in Fed. R. Civ. P. 26(b)(1). Among the factors which weigh against disclosure in this case are the importance of the issues at stake in this action; the amount in controversy; the importance of the discovery in resolving the issues; and whether the burden or expense of the proposed discovery outweighs its likely benefit. In the case at bar, Defendant's undefined litigation history has no bearing as to whether Plaintiff was provided with appropriate health care in the Arkansas Department of Correction within the 3 years prior to Plaintiff filing his lawsuit. (Citations omitted)

Moreover, Defendant may not be aware of all lawsuits filed in federal court against. It. As the Court regularly screens and dismisses frivolous inmate lawsuits, Defendant has no obligation under the Federal Rules to produce attorney work product in response to Plaintiff's discovery requests. Fed. R. Civ. P. 26(b)(3). Finally, because Defendant does not have the requested records in its possession, custody, or control it should not be required to obtain those documents from public sources or third parties. (citations omitted). The man hours and research required to produce such a request would be exceedingly costly to Defendant, both in attorneys' fees and PACER charges. Plaintiff may make requests for any such records at this own expense.

INTERROGATORY NO. 3: Please provide an accounting (Footnote 1 By "accounting" is meant only date filed, parties and current status; or if concluded, VERY brief summary of disposition – nothing more.) of all ongoing, settled or adjudicated lawsuits filed by inmates, or representatives thereof of their estates, in the Arkansas Department of Corrections system naming CCS or employees thereof as defendants which have proceeded beyond initial screening by the court either in federal or state court in the last five years.

RESPONSE: See Answer to Interrogatory No. 2.

The Court finds Plaintiff's request for lawsuits in Interrogatories 2 and 3 submitted on July 7, 2018 to be relevant. However, the requests are overly broad. The Court previously ordered Defendants to produce a "list of state or federal sanctions, fines, criminal charges or other court-imposed settlements or injunctions against or involving CCS over the last 3 years which are based on similar allegations made by Plaintiff in the prison setting for denial of medical care". (ECF No. 80, p.6).

Because the Court's order did not specifically mention "federal lawsuits", Plaintiff's Motion to Compel as to Interrogatory Nos. 2 and 3 on July 7, 2018 will be **GRANTED IN PART.** Defendants are ordered to produce a list of 1983 lawsuits (including the disposition of each lawsuit) over the last 3 years which have proceeded to trial, or been settled prior to trial, against CCS in connection with the services they provide to the Arkansas Department of Correction involving allegations of denial of medical care in the prison setting within thirty (30) days of the date of this order.

REQUEST NO. 3: Please provide all electronic communications, whether transmitted within the eOMIS client or by other means, from or to any CCS staff person concerning the Plaintiff since November 15th, 2013.

RESPONSE: Objection. Plaintiff's request is not proportional to the needs of this case. Among the factors which weigh against disclosure in this case are the importance of the issues at stake in this action; the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. (Citations omitted).

The Court finds Request No. 3 to be relevant but also duplicative and cumulative of the information previously ordered to be produced in its July 9, 2018 order. The Court previously ordered Defendants to produce the following information to Plaintiff: "All eOmis medical records and documents and other electronic documents concerning the Plaintiff from November 1, 2013

until the present" and "Internal and external communication concerning Plaintiff's medical care from November 1, 2013 until the present." (ECF No. 80, p. 5). In their Response to the instant motion to compel, Defendants state they stand on their objection even though Defendants represented they had provided this information to Plaintiff in their Response to Plaintiff's Motion for Sanctions. (ECF No. 134).

The Court is mindful that a litigant is not entitled to receive the same information in multiple ways. *Scott v. City of Bismarck*, 328 F.R.D. 242, 245 (D. North Dakota 2018). However, because Defendants have not clearly stated whether or not they have complied with the Court's previous order in their Response to the instant motion and instead have made only a conclusory response, Plaintiff's Motion to Compel as to Request No. 3 submitted on July 7, 2018 to CCS is **GRANTED IN PART**. Defendants are ordered to provide Plaintiff with the requested documents or identify which documents, previously produced, are responsive to Request No. 3 by Bates-number within thirty (30) days within the date of this order.

### D. July 15, 2018 request to CCS (ECF 130-4, pp. 5-9)

INTERROGATORY NO. 1: Please provide all those documents requested of Melissa Gifford in the Plaintiff's June 12th 2018 Additional Interrogatories for her, requests 2, 3, 4 and 5. Presumably, no longer an employee of CCs, she no longer has access to this materials, and therefore it is requested of CCs. An additional copy of that request is attached to this request for the Defense's convenience.

RESPONSE: This information was provided to Plaintiff in response to the Court's Order (DE #80) entered July 9, 2018.

Accordingly, Plaintiff's Motion to Compel with respect to Interrogatory 1 sent to Defendants on July 15, 2018 is denied because Defendants represent they have already provided the information to Plaintiff.

REQUEST NO. 1: Please provide a copy of any policy or implemented practice applied to the ORCU-SNU facility from the date CCS assumed responsibility for the medical care of the inmates therein which:

a) sought to reduce costs by:
     1. Reducing the number of prescriptions
     2. Requiring sick calls be initiated to renew long-term (Footnote "Long-term" to mean prescribed and then renewed for two or more 180 day periods consecutively.), non "life sustaining" medications
     3. Revising and cancelling or not renewing long-term medications
     4. Reducing the number of conditions considered 'chronic care"
     5. Reducing frequency of blood labs
     6. Refusing renewal of long-term medications with no reported or diagnosed change in condition
     7. Eliminating from the catalogue of approved medications and were not replaced by others applicable to the same conditions (e.g. simethicone)
  b) Sought to reduce the number of 'scripts' and/or required initiating sick calls for renewal of 'scripts' for permanent conditions
  c) Sought to reduce the occurance of referrals to outside providers for orthopedic needs
  d) Defined any condition which is remediable by surgery and which represents a major impairment (e.g. preventing walking) as not eligible for treatment.
  e) Medications no longer carried or discontinued, for any reason, during 2018, the Plaintiff was prescribed and the reason of that discontinuation of availability

RESPONSE: Objection.  Plaintiff's request is not proportional to the needs of this case.  Among the factors which weight against disclosure in this case are the importance of the issues at stake in this action; the importance of the discovery in resolving the issues; and whether the burden or expense of the proposed discovery outweighs its likely benefit.  (Citations omitted)

Plaintiff is suing Defendants in both their individual and official capacities.  Consequently, policies and practices seeking to reduce costs which might effect the medical care provided to Plaintiff is certainly relevant to Plaintiff's claim he is being denied medical care.  In addition, the Court finds Defendant CCS has failed to provide specific explanations or factual support as to how Plaintiff's request is improper.

Even so, the Court finds Plaintiff's request regarding policies and practices "c) sought to reduce the occurance of referrals to outside providers for orthopedic needs and d) defined any condition which is remediable by surgery and which represents a major impairment (e.g. preventing walking) as not eligible for treatment" are not related to Plaintiff's claims.  In addition, the multiple requests for information in Request No. 1 is cumulative and confusing.  Accordingly, Plaintiff's Request No. 1 submitted to CCS on July 15, 2018, is **GRANTED IN PART** as follows.

Within thirty days of the date of this order, Defendant CCS is ordered to produce any policies or practices of CCS in place from November 1, 2013 to the present at the ORCU-SNU which seek to reduce the costs of providing medical care to inmates such as: reducing the number of prescriptions for medications, reducing the number of conditions considered "chronic care," reducing the number of blood labs, reducing the catalogue of approved medications, and requiring sick calls to renew long-term prescribed medications.

REQUEST NO. 2: Please also provide the results of the blood draw of July 13th 2018, and any and all additional medical records generated since the Courts July 9th order.

RESPONSE: See Answer to Interrogatory No. 1.

The Court finds Plaintiff's request for the results of his blood test to be relevant. However, Defendants represent to the Court they have already provided the results to Plaintiff. Accordingly, Plaintiff's Motion to Compel the results of the blood draw on July 13, 2018 in Request No. 2 submitted on July 15, 2018, is **DENIED**.

## CONCLUSION

Accordingly, as set forth above, Plaintiff's Motion to Compel (ECF No. 130) is **GRANTED in part** and **DENIED in part.**

**IT IS SO ORDERED this 4th day of March 2019.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE