IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CHRISTOPHER EUGENE DE ROSSITTE                                    PLAINTIFF

v.                          NO. 6:17-CV-06043

CORRECT CARE SOLUTIONS, INC.
DR. NANETTE VOWELL, and NURSE
MELISSA L. GIFFORD                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Before the Court is a Motion for Summary Judgment filed by the Defendants on May 13, 2019.  (ECF No. 151).  The Plaintiff, an inmate at the Arkansas Department of Corrections ("ADC") Ouachita River Unit, responded on July 1, 2019.  (ECF No. 158).  He alleges constitutional claims for denial of medical care and retaliation, as well as violations of state medical malpractice law.  On September 11, 2019, Magistrate Judge Barry A. Bryant issued a Report and Recommendation.  (ECF No. 163).  Judge Bryant recommended that the Defendants' Motion for Summary Judgment be granted.  He further recommended that the Plaintiff's constitutional claims be dismissed with prejudice, and that his state law claims be dismissed without prejudice.  The Plaintiff filed Objections to Judge Bryant's recommendations on October 25, 2019.  (ECF No. 166).  These matters are now ready for the Court's consideration.  Upon review, Judge Bryant's Report and Recommendation (ECF No. 163) should be **AFFIRMED AND ADOPTED** in its entirety.  The Defendants' Motion for Summary Judgment (ECF No. 151) should be **GRANTED**.  The Plaintiff's constitutional claims are **DISMISSED WITH PREJUDICE**.  His state law claims are **DISMISSED WITHOUT PREJUDICE**.

## II. APPLICABLE LAW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct *de novo* review of those portions of a report and recommendation to which objections are made. For those portions to which no objections are made, this Court reviews for clear error. FED R. CIV. P. 72(b), Notes of Advisory Committee on Rules, 1983 edition ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). As to those portions to which De Rossitte made no objections, the Court finds there is no clear error in Judge Bryant's recommendations. For those portions to which there are objections, the Court undertakes *de novo* review.

## III. DENIAL OF MEDICAL CARE

### A. De Rossitte's Allegations

De Rossitte alleges denial of medical care in violation of the Eighth Amendment against Defendants Correct Care Solutions ("CCS"),[1] Dr. Nanette Vowell, and Nurse Melissa L. Gifford. (Second Am. Compl., ECF No. 14, at 4). He has sued the Defendants in their personal and official capacities. De Rossitte claims that he suffers from an undiagnosed illness that is "frequently debilitating and always painful." (*Id.*). De Rossitte believes that this condition is MRSA, a bacterial disease that causes infections throughout the body. He says that his symptoms have not been addressed despite various requests and grievances. (*Id.*). De Rossitte describes his symptoms in the following manner:

> Constant pain in tissues of face and head; frequent, usually daily headaches, mild to severe; excessive thirst; difficulty swallowing; recurrent boils and bumps on face; recurrent swelling of eyelids; earaches; muscle weakness and pain; shortness of breath; persistent and recurrent rashes; urine irregularities; poor blood work labs; bouts of nausea … INEFFECTIVELY addressed symptoms: constant eye pain and irritation; build-up of irritants under eyelids resulting in sleep deprivation; blurred,

---

[1] CCS is a for-profit healthcare provider that operates in various state and federal prisons throughout the country.

cloudy and dimmed vision; constant sinus trouble; recurring cough; recurring sore throat; edema on arms.

(*Id*. at 4, 8) (emphasis in original).

De Rossitte contends the inaction of the Defendants has led to substantial pain and suffering and constitutes deliberate indifference. As to his claims against Defendant Vowell, he asserts that she has been informed of and has refused to diagnose his symptoms; that she has refused to order diagnostic tests; that she has refused to remedy his pain and suffering; and that she has delayed in providing urgently needed medical care. His claims against Defendant Gifford fall along the same lines. He alleges that Gifford repeatedly refused to address and acknowledge his pain and suffering, and that she has refused to take action to address his medical needs. His allegations against CCS are based upon its alleged failure to address his medical requests.

## B. Deliberate Indifference

The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment, a guarantee that encompasses a prisoner's right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to a prisoner's objectively serious medical needs constitutes cruel and unusual punishment. *Id*. 103-04. To prevail on a claim of constitutionally deficient medical care, a plaintiff must allege that: (1) he suffered from an objectively serious medical condition, and (2) prison officials knew of the medical need yet deliberately disregarded it. *Id*.; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A serious medical condition is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 2004). Deliberate indifference is akin to criminal law recklessness. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir.

2008). Negligence, even gross negligence, does not constitute deliberate indifference. *Estelle*, 429 U.S. at 105-06.

When an inmate alleges that delayed medical treatment is constitutionally deficient, the objective seriousness of the deprivation should also be measured by reference to the *effect* of the delay in treatment. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (emphasis added). Furthermore, the Eighth Amendment does not require prison personnel to deal with every medical complaint as quickly as each inmate might wish. *See, e.g.*, *Johnson v. Hamilton*, 452 F.3d 967, 972-73 (8th Cir. 2006) (one-month delay in treating fractured finger did not rise to a constitutional violation); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) (one-month-delay in providing medical treatment after leg pain complaints did not arise to deliberate indifference). An inmate's mere disagreement with treatment decisions does not arise to a level of deliberate indifference. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). Similarly, the mere denial of an inmate's proposed course of treatment does not arise to deliberate indifference. *Long v. Nix*, 86 F.3d 761, 761 (8th Cir. 1996) ("Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.") (internal citations omitted).

### C. De Rossitte's Objections

De Rossitte filed a thirty-eight-page Objection to Judge Bryant's Report and Recommendation. (ECF No. 166). His denial of medical care objections can be categorized into the following issues: the Court's consideration of medical affidavits; De Rossitte's hearing impairment claims; his eye impairment claims; his blood condition; his ankle condition; and his official capacity claims.

1. **Medical Affidavits**

De Rossitte opposes the Defendants' reliance on affidavits submitted by Drs. Jeffrey Stieve and Albert Kittrell. (Pl.'s Opp'n to the Report & Recommendation, ECF No. 166, at 2, 29-30; *see also* Pl.'s Resp., ECF No. 158, at ¶ 6). In their Motion for Summary Judgment, the Defendants use these affidavits to establish that De Rossitte received adequate medical care. (Mot. for Summ J., ECF No. 151, at ¶ 7; *see also* Stieve Aff., ECF No. 152-13; Kittrell Aff., ECF No. 152-14). Both doctors state they evaluated De Rossitte's medical and mental health records, but neither affidavit suggests they provided personal care to De Rossitte. De Rossitte contends the Court should not consider the affidavits on this basis. It is ordinarily true that an affidavit in support of summary judgment should be based on personal knowledge. FED. R. CIV. P. 56(c)(4); *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005). However, expert opinions are not subject to this requirement. An expert may offer his opinions "based on sufficient facts or data." FED. R. EVID. 702(b). Drs. Stieve and Kittrell reviewed De Rossitte's records and reached their conclusions from their own professional judgment. Because their affidavits offer expert opinions, it is proper for the Court to consider them in determining the merits of summary judgment.

2. **Hearing Impairment Claims**

De Rossitte has been diagnosed with hearing loss. This diagnosis constitutes an objectively serious medical condition. De Rossitte alleges that CCS staff mishandled one of his hearing aids and refused to authorize a replacement. He states that he did not receive a replacement hearing aid for over "a year and a half." (Pl.'s Opp'n to the Report & Recommendation, ECF No. 166, at 24). Specifically, De Rossitte claims that he turned in a broken hearing aid in March 2015, but he did not receive a replacement aid for "nineteen-plus

months." (*Id*. at 5). He also alleges that he was not provided with replacement hearing aid batteries in a timely manner. He further claims that he did not have functioning batteries for "more than a quarter of the year" from April 2016 to April 2017, and that he went without batteries for time intervals of "days or weeks." (*Id*.).

Upon this Court's review, it is evident that De Rossitte received hearing aid batteries over twenty times in response to his requests between March 18, 2015 and November 11, 2017. De Rossitte visited an audiologist on June 9, 2016 and October 27, 2016, and he received fitting for new hearing aids. De Rossitte has always possessed at least one functioning hearing aid throughout the time in question.

De Rossitte's hearing impairment claims constitute allegations of delayed medical care. "[A]n inmate who claims that delay in medical treatment rose to the level of a constitutional violation must place verifying medical evidence in the record *to establish the detrimental effect of delay in medical treatment*." *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) (emphasis added). Here, De Rossitte does not offer any verifying medical evidence to show that delayed treatment worsened his ear condition. *Wilson v. Nelson*, No. 6:13-CV-6036-SOH, 2015 WL 1470289, at *8 (W.D. Ark. Mar. 31, 2015) ("[t]he objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record."). The record demonstrates that De Rossitte received reasonably attentive care. De Rossitte cannot create a question of fact by stating that he feels as if he received inadequate treatment. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

Accordingly, the Court grants summary judgment as to De Rossitte's hearing impairment claims.

### 3. Eye-Care Claims

De Rossitte has been diagnosed with dry eyes, which constitutes an objectively serious medical condition. He asserts the Defendants have not sufficiently treated his persistent eye irritation and pain. De Rossitte acknowledges that he has received prescription eye drops since December 2014 or January 2015, but he alleges the drops have been ineffective in treating his condition. During his deposition, De Rossitte acknowledged that his eyes become clear and feel better after he uses his eye drops. (De Rossitte Dep., ECF No. 152-12, at 29). However, he states the drops are effective for only thirty minutes. He claims that the drops are not an "adequate long term fix." (Pl.'s Opp'n to the Report and Recommendation, at 14). He believes the eyedrops cause "stinging and burning." (*Id*. at 18).

De Rossitte contends that Defendant Vowell refused to consider alternative treatment options for approximately two years. (*Id*.). He further contends that Defendants Vowell and Gifford knew that his ongoing eye-care treatments were ineffective. (*Id*. at 8). In addition to eye drops, De Rossitte has received antibiotics as well as Lubrifresh medication and fish oil. However, he asserts that he was not given antibiotic eye drops in a timely manner. (*Id*. at 13). The record reveals he received the antibiotic prescription in December 2016, but he complains that Vowell did not "re-prescribe" the medication. (*Id*. at 18).

Furthermore, De Rossitte claims that he did not see an optometrist until "two years after his initial complaints." (*Id*. at 14). He also states that it took one-to-two months for Defendant Vowell to schedule an ophthalmologist appointment, despite the fact he needed care on an urgent basis. (*Id*. at 8-9). An ophthalmologist evaluated De Rossitte in January 2017, and he has been evaluated by an optometrist on two separate occasions. CCS personnel have ordered lab tests to evaluate De Rossitte's eye condition. The exams revealed that De Rossitte does not have an eye

infection. Notwithstanding these findings, De Rossitte states that his eye condition cannot be treated by a "cursory exam." (*Id*. at 2). He contends that detection of his condition requires specialized equipment and techniques, and that it cannot be observed "with a simple look-see." (*Id*. at 2-3, 8).

Upon a thorough review of the record, the Court concludes that De Rossitte's eye-care claims are without merit. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment. *Long*, 86 F.3d at 761. De Rossitte's objections regarding preferred examinations and medications are simply of the kind that constitute a mere disagreement with treatment decisions – objections that do not arise to a level of deliberate indifference. *Popoalii*, 512 F.3d at 499; *Jolly*, 205 F.3d at 1096. Moreover, De Rossitte fails to present evidence suggesting that any of the alleged delays resulted in a detrimental effect. *Crowley*, 109 F.3d at 502 (stating that an inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment"); *Dulany*, 132 F.3d at 1243 (upholding summary judgment when the plaintiffs failed to submit verifying medical evidence to demonstrate that delayed treatment resulted in an adverse effect).

Accordingly, the Defendants are entitled to summary judgment on De Rossitte's eye-care claims.

### 4. Blood Condition

De Rossitte contends there have been various problems with his blood cell count. He acknowledges that he underwent blood tests every three to six months, but he says these examinations did not properly test for a condition that he believes to be a bacterial infection. (Pl.'s Opp'n to the Report & Recommendation, ECF No. 166, at 7, 13). He says that his blood

test results were abnormal and should have prompted further investigation and specialized testing. (Pl.'s Statement of Facts, ECF No. 160, at 5).

The record shows that none of De Rossitte's blood tests showed abnormal results. Other than his own allegations, De Rossitte presents no evidence to rebut these findings. Thus, the Court concludes that De Rossitte's blood condition does not constitute an objectively serious medical condition. *See Camberos*, 73 F.3d at 176 (defining a serious medical condition as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."). Assuming, *in arguendo*, that his blood condition constitutes an objectively serious medical condition, the record demonstrates that De Rossitte's blood count has been adequately monitored and that he received constitutionally sufficient care. De Rossitte has a right to constitutionally adequate medical care, but he does not have a right to any particular type of medical treatment. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (Eighth Amendment does not require that prisoners receive "unqualified access to health care"); *Long*, 86 F.3d at 761.

Accordingly, the Court grants summary judgment as to De Rossitte's blood condition claims.

### 5. Ankle Condition

De Rossitte sustained a broken ankle in a suicide attempt in 2008, an injury that left him confined to a wheelchair. (ECF No. 152-12, at 13, 22). On July 15, 2016, De Rossitte filed a grievance requesting reconstructive surgery on his right ankle and requesting an appointment with an orthopedic surgeon. (ECF No. 14-1, at 45). His request was ultimately denied because it was not "life-threatening." (*Id*. at 46). Defendant Vowell deemed that it was not "medically necessary" for De Rossitte to be evaluated by an orthopedist. (*Id*.).

In his Objections to the Report and Recommendation, De Rossitte says that his right foot and ankle were amputated on July 15, 2019. (Pl.'s Opp'n to the Report and Recommendation, at 26-27). He claims that if his ankle condition were properly addressed "3 or 4 years earlier, [the] soft tissue [in his ankle] undoubtedly would have been in a less deteriorated state." (*Id*. at 26.). He ultimately claims that earlier surgery and medical attention could have improved his condition. (*See* Pl.'s Statement of Facts, ECF No. 160, at 4-5, 11). Despite these assertions, the Court finds that De Rossitte attempts to litigate an issue that he failed to address in his pleadings. The Second Amended Complaint (ECF No. 14) and the Supplement (ECF No. 28) have legal effect in this case, and neither pleading discusses De Rossitte's ankle condition.

Accordingly, the Court will not consider the merits of a denial of medical care claim with regard to his ankle condition.

### 6. Official Capacity Claims

De Rossitte has also sued the Defendants in their official capacities. Official capacity claims are essentially the "equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). An official capacity claim requires "proof that a policy or custom of the [governmental] entity violated the plaintiff's rights." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Throughout his briefs and objections, De Rossitte mentions that CCS policies had the effect of delaying his medical care. For example, he believes that the cost cutting policies of CCS prevented him from receiving replacement hearing aid batteries in a timely manner. (*See* Pl.'s Statement of Facts, ECF No. 160, at 3). De Rossitte, however, only submits one policy for the Court's review. The policy states that when a referral is deemed "clinically urgent" by a medical provider, the provider recommends that a patient be seen by a specialist within seven days. (ECF No. 166-1, at 4).

De Rossitte alleges that Defendant Vowell deviated from this policy by failing to schedule an ophthalmologist appointment until thirty-seven days after an optometrist recommended the appointment. (Pl.'s Objections to the Report and Recommendation, ECF No. 166, at 18). It is true that deviation from written policy can constitute a custom in violation of the Eighth Amendment. *Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 829 (8th Cir. 2013). But to establish such a claim, an inmate must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That [the] plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Id*.

Here, De Rossitte fails to present evidence as to how the alleged deviation from this policy violated his constitutional rights. *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (party opposing summary judgment must "meet proof with proof by showing a genuine issue as to a material fact."). The Eighth Amendment does not require prison personnel to deal with every medical complaint as quickly as an inmate might wish. *Johnson*, 452 F.3d at 972-73. Even if De Rossitte's care was not prompt, the record demonstrates that he received reasonably attentive medical attention. Accordingly, summary judgment is appropriate as to De Rossitte's official capacity claims.

## IV. RETALIATION

De Rossitte asserts retaliation claims against Defendants Vowell and Gifford in their personal capacities. He claims they took actions that "based on the circumstances, could only,

reasonably be explained by a retaliatory motive for which [there were] no alternative explanation[s]." (Pl.'s Opp'n to the Report and Recommendation, ECF No. 166, at 15). Specifically, he alleges that Vowell and Gifford retaliated against him because he filed too many medical grievances. (Second Am. Compl., ECF No. 14, at 5). He further alleges that Vowell retaliated against him by refusing to renew his prescriptions. (Pl.'s Opp'n to the Report and Recommendation, ECF No. 166, at 10-11, 15). As to Gifford, he contends that she retaliated against him by "cast[ing] aspersions upon his character with false statements" and by denying his requests for medical treatment. (Second Am. Compl., ECF No. 14, at 5).

A prisoner's Eighth Amendment rights are violated if prison officials retaliate against the prisoner for exercising his constitutional rights. *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993). A prisoner has a constitutional right to file a grievance under the First Amendment. *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994). A prima facie case of retaliation requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) the discipline was motivated by the exercise of the prisoner's right. *Goff*, 7 F.3d at 738. Alleging retaliatory conduct without evidence is insufficient to establish the prima facie case. *See Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). In the present case, De Rossitte clearly engaged in a constitutionally protected activity when he filed his grievances. But other than his own assertions, he fails to provide evidence suggesting that Vowell and Gifford retaliated against him. *Williams*, 620 F.3d at 909 (party opposing summary judgment must "meet proof with proof by showing a genuine issue as to a material fact."). Because De Rossitte fails to present proof of his assertions, the Court grants summary judgment as to his retaliation claims.

## V. STATE LAW MEDICAL MALPRACTICE CLAIMS

De Rossitte also alleged state law claims under the Arkansas Medical Malpractice Act. Jurisdiction over these claims existed by virtue of supplemental jurisdiction. The Court had original jurisdiction over his denial of medical care and retaliation claims, but those claims have been dismissed. A federal district court "may decline to exercise supplemental jurisdiction over a claim" when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court finds there are no reasons to justify its consideration of De Rossitte's state law claims. Accordingly, the Court declines to exercise its supplemental jurisdiction.

## VI. ORDER

For the reasons set forth herein above, the Court makes its order and concludes the following:

1. The Report and Recommendation (ECF No. 163) is **AFFIRMED AND ADOPTED** in its entirety.
2. The Defendants' Motion for Summary Judgment (ECF No. 151) is hereby **GRANTED**.
3. The Plaintiff's constitutional claims are hereby **DISMISSED WITH PREJUDICE**.
4. The Plaintiff's state law medical malpractice claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED this 5th day of February 2020.**

/s/ Robert T. Dawson
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**

13